IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Taunya Hubbard,                                Case No. 3:07CV3169

           Plaintiff

      v.                                               ORDER

Wal-Mart, et al.,

           Defendants

          This is a case about alleged employment discrimination and defamation. Plaintiff Taunya Hubbard alleges that defendants Wal-Mart Stores East, L.P., [Wal-Mart], Wal-Mart's Market Human Resources Manager Ron Beadnell and Market Manager Dann Moore discriminated against her because of her gender and race by terminating and demoting her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Hubbard also claims that Wal-Mart defamed her by making false statements to prospective employers.

          Jurisdiction over Hubbard's Title VII claim is proper under 28 U.S.C. § 1331 and supplemental jurisdiction over her state law defamation claim is proper under 28 U.S.C. § 1367.

1

Pending is defendants' motion for summary judgment [Doc. 33]. For the reasons discussed below, defendants' motion shall be granted.

**Background**

Hubbard's employment with Wal-Mart began on January 14, 2003. After working as a cashier in Oregon, Ohio, Wal-Mart promoted Hubbard to Customer Service Manager and then Head Customer Service Manager. In early 2006, Hubbard started participating in Wal-Mart's management training program. In June, 2006, she began working as an Assistant Manager at the Wal-Mart Superstore in Napoleon, Ohio.

Despite working in Napoleon, Hubbard lived in Oregon, a suburb east of Toledo, Ohio. Hubbard, consequently, had to drive an hour and ten minutes each way to and from work.

On November 24, 2006, the Friday of Thanksgiving weekend, Hubbard was en route to work, but stopped her trip due to extreme fog. Hubbard notified her manager, Tony. The weather conditions remained the same the following day and Hubbard again notified Tony that she would not be able to get to work.

On November 27, 2006, the following Monday, Hubbard called Moore and requested a transfer to a position at a Wal-Mart store in the Toledo-area. According to Hubbard, she requested a transfer because her father was ill and she did not want to continue driving such long distances on a daily basis.

Moore advised Hubbard to speak to Beadnell; Hubbard did so, repeating her request for a transfer. According to Wal-Mart, Hubbard suggested that she may be willing to take an hourly position. Hubbard denies this.

2

According to Hubbard, based on Wal-Mart's Associate Transfer Policy, her request should have triggered a thirty-day period of unpaid leave. As such, Plaintiff should have remained on unpaid leave until December 26, 2008. Wal-Mart's transfer policy states:

> Associates seeking to transfer from a field location to a Home Office position or from one field location to another field location may be placed on a 30-day unpaid leave of absence after leaving their original position to find another position. After the 30 day time period has been exhausted and the Associate has not found a position, his or her termination will be terminated. The sending location will be responsible to follow up with the Associate regarding the status of their transfer and continued employment.

[Associate Transfer Policy, Exh. D, p. 3].

Plaintiff began searching for a management position in the Toledo area. She contacted several stores, but none had an opening for an assistant manager.

Soon after Hubbard requested a transfer, Aimee Chafins, manager of Wal-Mart's Holland, Ohio, store, notified Hubbard about the availability of a cashier's position. Hubbard declined this offer by stating: "I don't want a cashier position." [Hubbard Depo., p. 49].[1]

On or about December 1, 2006, Dawn McDonald, co-manager of Wal-Mart in Holland, called Hubbard to offer her work as a cashier in the layaway department. Hubbard again refused. Hubbard explains that these positions are lower than that of a manager and she was under no obligation to accept them.

According to Wal-Mart, after Hubbard turned down these cashier positions, she did not contact any other Wal-Mart stores in the Toledo area. Nor did she search the Wal-Mart database to determine whether positions, including the Oregon Assistant Manager position, were open or physically go into any of the stores where she sought a position.

---

[1] Holland is a western suburb of Toledo.

3

On December 12, 2006, Chafins terminated Hubbard for job abandonment in violation of Wal-Mart's no call/no show policy. Hubbard received her notice of termination on December 21, 2006. Her treatment by Wal-Mart, plaintiff contends, was based on race and gender.

In addition, Hubbard claims that Wal-Mart defamed her. When a friend who worked at Dana Corporation called Wal-Mart to obtain a reference, a Wal-Mart representative stated that he could not discuss Hubbard's prior employment due to pending litigation. This was a truthful statement, as litigation was, in fact, pending at the time of that call.

## Standard of Review

The moving party is entitled to a judgment as a matter of law where the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue as to any material fact. FED.R.CIV.P. 56(c). A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (Emphasis in original).

In considering Wal-Mart's motion, I must accept Hubbard's evidence as true and draw all reasonable inferences in her favor. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If, as the nonmoving party, Hubbard fails to make a sufficient showing on an essential element of her case, Wal-Mart is entitled to summary judgment as a matter of law. *See id.*

## Discussion

### 1. Race and Gender Discrimination

Courts analyze claims of unlawful employment discrimination unsupported by direct evidence under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir.1998).

Under this test, Hubbard must first establish a *prima facie* case of discrimination. *See id.* If she does so, the burden shifts to Wal-Mart to articulate a legitimate, non-discriminatory reason for its action. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003). If Wal-Mart does so, the burden shifts back to Hubbard to "rebut [] this proffered reason by proving that it was a pretext." *See id.*

### A. *Prima Facie* Case

To establish her *prima facie* case, Hubbard must show that: 1) she is a member of a "protected class"; 2) she is qualified for the position; 3) the defendants subjected her to an adverse employment action; and 4) the defendants treated similarly-situated individuals outside of her protected class more favorably than her. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992).

Hubbard can successfully establish that she is a member of a protected class given that she is an African American female. She is also qualified for the position of assistant manager. Only two issues remain in dispute–whether Hubbard experienced an adverse employment action and whether Wal-Mart treated similarly-situated individuals outside of Hubbard's protected class more favorably than her.

### i. Adverse Employment Action

5

Hubbard claims that she experienced two adverse employment actions: demotion and termination. Although I disagree that Wal-Mart demoted the plaintiff, I find that Hubbard establishes this element as to her termination.

Hubbard was not demoted. She voluntarily resigned from her management position in Napoleon and sought a transfer for personal reasons. Wal-Mart tried to accommodate her by offering her available positions of cashier and lay-away cashier. Hubbard did not accept these offers. According to Hubbard's own testimony, she stated: "I don't want a cashier position." [Hubbard Depo., p. 49].

Hubbard can, however, establish that she suffered an adverse employment action by means of her termination, which undoubtedly is an adverse employment action. *See, e.g., Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir.1996) (finding termination of employment to be a materially adverse employment action). Because Hubbard received a letter from Wal-Mart terminating her employment, she establishes the second prong in her *prima facie* case of discrimination.

### ii. Treated Less Favorably Than Similarly-Situated Employees Outside of Protected Class

Hubbard cannot establish a *prima facie* case of either race or gender discrimination because she cannot show that Wal-Mart treated similarly-situated individuals outside of her protected class more favorably than her.

Hubbard tries to meet her burden in this regard with purported statistical proof. She notes that approximately 27% of Wal-Mart's employees in Holland from Jan 1, 2006 to Jan 31, 2008 were African American, but 35% of all terminated employees were African American. In other words, Wal-Mart terminated 57% of all African American employees during this period.

6

She also states that although only 15% of Wal-Mart's employees in Oregon were African American during a certain time period, 18% of employees Wal-Mart terminated during that period were African American, resulting in the termination of 35% of its African American employees.

Finally, Hubbard cites the following statistics: In Market 172, [Wal-Mart stores in northwest Ohio], from January 1, 2006 through January 31, 2007, 7% of its managers were African American and 10% of all managers terminated were African American. This means that Wal-Mart terminated 20% of African American managers. [2]

These statistics are unpersuasive.

The statistics do not purport to support Hubbard's claim that Wal-Mart treated her less favorably than its male employees as the statistics compare employees of different races, not of different genders. Hubbard's claim of gender discrimination, therefore, remains unsupported and cannot survive Wal-Mart's motion for summary judgment.[3]

Hubbard, moreover, offers these statistics without providing an adequate foundation or testimony from a statistician. While most plaintiffs who present statistical evidence do so by expert

---

[2] Hubbard also asserts that Wal-Mart terminated the majority of African American assistant managers hired or trained between August, 2005 and August, 2006. Hubbard submitted a discovery request to obtain this information, which Wal-Mart has not yet complied with. Hubbards urges me to find accept her allegations as true given Wal-Mart's failure to comply with her request. I will not. Hubbard should have filed a motion to compel discovery to obtain this information, although it is unclear whether such statistics would be more probative than the ones already proffered.

[3] In Hubbard's most recently filed brief [Doc. 41], she notes that she recently obtained expert testimony documenting Wal-Mart's tendency to discriminate against female employees. I find such testimony insufficient to create a *prima facie* case. The expert completed this report in 2003, two years before Hubbard's incident occurred. Moreover, as explained more thoroughly in my discussion regarding the statistical comparison between Caucasian and African American employees, this report is too general to be probative as to Hubbard's case.

testimony, the Sixth Circuit does not require expert testimony in support of statistical proof. *In re Meridia Products Liability Litigation*, 328 F.Supp.2d 791, 808 (N.D.Ohio 2004) ("Within the Sixth Circuit, 'there is no requirement that statistical evidence be supported by expert testimony.'") quoting *McCabe v. Champion Intern. Corp.*, 1990 WL 156104, * 5 (6th Cir.) (unpublished disposition).

Statistics, nonetheless, must be supported by some information to help the court understand their significance. *See Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 944 (6th Cir. 1987) ("For statistics to be valid and helpful in a discrimination case, both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination.").

Moreover, to create an inference of discrimination, statistics "must show a significant disparity and eliminate the most common nondiscriminatory explanations for the disparity." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1466 (6th Cir.1990).

Here, Hubbard fails to explain the significance of her proffered statistics. Not only does she fail to offer expert testimony, she does not explain her methodology or the statistics' explanatory power. Hubbard cannot, accordingly, rely on these statistics to establish her *prima facie* case.

Perhaps most problematic to Hubbard is the fact that her proffered statistics lack probative value in that they do not compare Hubbard to similarly-situated employees. "For statistical evidence to be probative, the statistical pool or sample used must logically be related to the employment decision at issue and the statistical method applied to the pool or sample must be meaningful and suitable under the facts and circumstances of the case." *Jones v. Pepsi-Cola Metro. Bottling Co., Inc.*, 871 F.Supp. 305, 310 (E.D.Mich. 1994).

8

Hubbard's statistics do not compare her to other Caucasian employees terminated for the same reason or employees who requested a transfer for personal reasons. Nor do they address independent variables, like job skill, education, experience, performance or self-selection. The statistics do not even distinguish between employees who voluntarily left Wal-Mart and those terminated for violating company policy.

Hubbard's statistics merely provide a breakdown of Wal-Mart's racial composition – a breakdown insufficient to establish her *prima facie* case. *See McDonnell Douglas, supra*, 411 U.S. at 805 n. 19 ("We caution that such general determinations, while helpful, may not be in and of themselves controlling . . .").

Outside of Hubbard's statistical evidence, she attempts to show that Wal-Mart treated others more favorably than her by stating that Wal-Mart created two management positions in April, 2007, and filled them with two non African American individuals. The fact that Wal-Mart created two new positions does not show that it treated others more favorably than Hubbard. There is no evidence that Wal-Mart created these positions to provide employees with a place to work or as a placement for employees who sought transfers. Wal-Mart might have had other business reasons for creating such positions and the fact that they did so does not establish Hubbard's *prima facie* case.

Because Hubbard has failed to establish her *prima facie* case of employment discrimination, there is no need to discuss the next two steps in the burden-shifting scheme.

### 2. Libel and Slander

To prevail on a defamation claim, whether libel or slander, a plaintiff must sufficiently allege: 1) a false and defamatory statement concerning another; 2) an unprivileged publication to a third party; 3) fault amounting at least to negligence on the part of the publisher; *and* 4) either

9

actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Fitzgerald v. Roadway Express, Inc.*, 262 F.Supp.2d 849, 855 (N.D.Ohio 2003); *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Servs., Inc.*, 81 Ohio App.3d 591, 601 (1992).

Truth is a complete defense to a defamation claim. *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 445 (1996).

Because, as is undisputed, plaintiff was in litigation with Wal-Mart, he defamation claim fails because the Wal-Mart representative's statement was true. *See id.*

Even if this statement was false, Hubbard's defamation claim against Moore and Beadnell would fail because she has not provided any evidence suggesting that Moore or Beadnell participated in this conversation.

Hubbard also asserts that Wal-Mart defamed her because after several interviews with potential employers, she never received an offer of employment. She claims that Wal-Mart must have made false claims to her prospective employers when they sought a reference. Hubbard has no support in the record for this aspect of her defamation claim. Her speculation about what Wal-Mart may have told others who called for a reference fails to establish a *prima facie* case of defamation.

Accordingly, I grant Wal-Mart's motion for summary judgment as to Hubbard's claim of libel and slander.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendants' motion for summary judgment be, and the same hereby is granted.

So ordered.

        s/James G. Carr
        James G. Carr
        Chief Judge